UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTEO RAGO,

    Plaintiff,

v.

ING DIRECT,

    Defendant.

No. 13 C 2815

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Plaintiff Matteo Rago filed a complaint against defendant ING Direct ("ING")[1] in the Circuit Court of Cook County, Illinois, for breach of a contract to refinance Rago's mortgage. R. 1-2. ING removed the case to this Court, R. 1, and Rago now seeks to have it remanded to state court, arguing that it does not meet the amount in controversy requirement of 28 U.S.C. § 1332(a). R. 13. For the reasons stated below, Rago's motion is granted.

**Background**

In his initial complaint in state court, Rago alleged that he "entered into a new contract with [ING] to restructure his current loan from an interest only loan to an interest and principal loan." R. 1-2 ¶ 4. The contract allegedly provided for the loan to be restructured as a "5/1 ARM," at a lower interest rate of 3.5%, decreasing

---

[1] ING notes that "ING Direct," the name Rago used to caption his complaint, was the popular name of ING Bank, FSB, which was acquired by Capital One Financial Corporation in February 2012, and is now known as Capital One 360, a division of Capital One, N.A. *See* R. 1 at 1 n.1, 3; R. 16 at 1 n.1. ING does not contend that it is not the proper defendant.

Rago's monthly payments to $2,352.19. *Id.* ¶ 6. Rago also alleged that the contract provided that he would pay ING a lump sum of $11,300 to decrease the principal to $493,700. *Id.* ¶ 5. Rago claims that ING has refused to "consummate this deal." *Id.* ¶ 7.

Rago used various language at several different points in the original complaint to express his demand for damages. He alleged that he "suffered damages in the loss of reduction of the monthly payment amount and monthly reduction in the principal in excess of [$20,000]." *Id.* ¶ 8; *see also id.* ¶ 7 (Rago "has been damaged in excess of $20,000 regarding this loan and continues to be damaged each month for the failure of ING to abide by and consummate the contract."). But he also asked the Court to find that ING "violated the condition[s] and terms of their contract and pay Mr. Rago [$493,700.00] as [sic] breach of the agreement." *Id.* at ¶ 10. In the complaint's last paragraph, Rago reiterated his demand for $493,700 "or in the alternative . . . [that ING] pay $88.06 per month to Plaintiff commencing May 1, 2011 with statutory interest of 9% and reduce the loan principal amount to reflect the monthly principal payments." *Id.* at 4.

At a hearing held nine days after ING filed its notice of removal, the Court noted that Rago's allegations regarding the amount in controversy were not clear, and questioned whether the allegations were sufficient to meet the statutory minimum amount. Rago stated that he would file an amended complaint to clarify that he was not seeking the full loan amount of $493,000. Rago's amended complaint seeks "damages in the loss of reduction of the monthly payment amount

2

and monthly reduction in the principal in excess of [$20,000]." R. 9 ¶ 8. The amended complaint increases the difference in monthly payment amount from $88.06 to $120.21 per month, R. 9 at 4, but it does not seek $493,700. *See, generally, id.*

**Legal Standard**

"[T]he party removing the case to federal court . . . ha[s] the initial burden of establishing by a preponderance of the evidence facts that suggest the jurisdictional amount has been satisfied." *Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011). "All that is needed at the pleading stage to satisfy the jurisdictional amount requirement is a good-faith allegation . . . ." *Loss v. Blankenship*, 673 F.2d 942, 950 (7th Cir. 1982) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). "The basic criterion for determining whether the amount sought was not made in good faith is if it can be concluded beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Loss*, 673 F.2d at 950 (quotation and citation omitted). Once the removing party has met its initial burden, "jurisdiction will be defeated only if it appears to a legal certainty that the stakes of the lawsuit do not exceed $75,000." *Carroll*, 658 F.3d at 680; *see also Back Doctors Ltd. v. Metro. Prop. & Cas. Co., Inc.,* 637 F.3d 827, 830 (7th Cir. 2011) ("[T]he estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible."). "The amount in controversy is evaluated as of the time of removal, although events subsequent to removal may clarify what the plaintiff was actually

3

seeking when the case was removed." *Carroll*, 658 F.3d at 680-81 (internal citation omitted).

## Discussion

Rago states that the amount in controversy in his original complaint "was unclear due to a scrivener's error." R. 17 at 4. Rago argues that "[n]owhere has Defendant demonstrated to the contrary that at the time of removal that the matter in controversy was more than $3,365.00 or $31,110.00." R. 17 at 3. Rago asserts that what he "has always hoped to get out of this litigation," *id.* at 4, is for ING "to pay back $120.21 per month commencing May 1, 2011 . . . to present with statutory interest at 9% and reduce the loan principal amount from $493,700.00 to the current amount of $466,189.45." *Id.* at 2.[2]

ING argues that Rago "explicit[ly] . . . hoped to get $493,700" in his original complaint, and that this "hope" is the salient factor for the purpose of ascertaining whether the amount in controversy is sufficient to support diversity jurisdiction. R. 16 at 5. ING cites case law holding that plaintiffs are not permitted to amend the jurisdictional amount alleged in order to escape diversity jurisdiction. R. 16 at 4 (citing *Wujec v. AT&T Corp.*, 2004 WL 783249, at *2 (N.D. Ill. Jan. 23, 2004); *Jennings v. Merril Lynch Pierce Fenner & Smith, Inc.*, 2003 WL 22290405, at *4 (N.D. Ill. Oct. 3, 2003)). ING contends that Rago's "purported excuse for his original

---

[2] Rago's original complaint alleged that the difference in monthly payments was $88.06. R. 1-2 ¶ 13. In his papers supporting his motion for remand (but in neither of his complaints), Rago alleges that his current monthly payment is $2,472.40. R. 17 at 3. The difference between $2,472.40 and the $2,352.19 monthly payment Rago alleges ING promised him, R. 1-2 ¶ 6; R. 9 ¶ 6, is $120.21, which is the number Rago alleges in his amended complaint. R. 9 ¶ 13.

4

demand is . . . irrelevant," and because Rago is "master of his complaint," the Court should not look beyond his demand of $493,700. R. 16 at 5-6.

ING fails to address the real issue, which is not whether Rago is permitted to amend his complaint to foil diversity jurisdiction, but whether his original demand for $493,700 had any legal basis to begin with. Even when a complaint explicitly seeks an amount in excess of $75,000, the case should be remanded if it is legally impossible for the plaintiff to be awarded damages sufficient to support the federal court's jurisdiction. *See Smith v. Am. Gen. Life and Accident Ins. Co., Inc.*, 337 F.3d 888, 894-96 (7th Cir. 2003) (instructing the district court to remand the case to state court after finding that it would be legally impossible for plaintiff to reach the jurisdictional minimum, despite the fact that the plaintiff sought $1 million in punitive damages and the parties and the district judge all agreed that the allegations were sufficient); *Lawrence Crawford Ass'n for Exceptional Citizens, Inc. v. Conversource, Inc.*, 2008 WL 2557461, at *2, 4 (S.D. Ill. June 23, 2008) (remanding to state court a complaint that alleged $80,580 in damages; the remand was based on "evidence which came to light during discovery regarding the true amount of lost profits [which] sheds light on what the actual amount at stake was in the suit at the time of removal"); *see also Shaver ex rel. Ford v. Odell*, 2012 WL 1077414, at *4 (S.D. Ill. Mar. 30, 2012) (plaintiff's "refus[al] to admit to damages less than $75,000" was insufficient to establish the minimum amount in controversy, and the court "d[id] not find it plausible without some evidence that

plaintiffs' claims of future medical expenses, or pain and suffering, will reach the rest of the way to $75,000").

The Court finds that there was never any legal basis for Rago to be awarded an amount in excess of $75,000, let alone the $493,700 described in his original complaint. The $493,700 damage figure was never, and will never be, even plausibly possible. Rago alleges that ING breached a contract to refinance his mortgage such that he lost the opportunity to pay a decreased monthly payment at a lower interest rate and to pay down the principal. On the basis of these allegations, the only damages Rago can possibly seek flow from the higher interest he has paid and the fact that no portion of his payments has been applied to the loan's principal.[3]

The alleged refinanced loan was structured as a "5/1 ARM," meaning that the interest rate would be fixed for the first five years, and variable after that. Thus,

---

[3] This conclusion is in accord with the measure of damages for breach of contract as stated in the Restatement (Second) of Contracts. Restatement § 347 provides that "the injured party has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach." However, "[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made," and "[a] court may limit damages for foreseeable loss . . . in order to avoid disproportionate compensation." *Id.* § 351.

Without expressing any opinion on which state's law should govern the substantive issues in this case, the Court also notes this analysis of the damages available to Rago is in accord with Illinois law. *See Collins v. Reynard*, 607 N.E.2d 1185, 1186 (Ill. 1992) (In Illinois the "basic principle for the measurement of contract damages is that the injured party is entitled to recover an amount that will put him in as good a position as he would have been in had the contract been performed as agreed."); *In re Ill. Bell Tele. Link-Up II*, 2013 WL 3296617, at *4 (Ill. App. Ct. June 28, 2013) ("[T]he claimant should not be placed in a better position, providing a windfall recovery. Damages which naturally and generally result from a breach are recoverable. Damages which are not the proximate cause of the breach are not allowed.") (internal quotations and citations omitted).

the five year period during which Rago was certain to benefit from the lower interest rate is the relevant period to determine his potential damages.

Rago alleges that ING agreed to decrease his monthly payments by $120.21 per month. R. 9 ¶ 13.[4] Including the 9% interest Rago seeks, compounded annually, this equals a total of $8,633.06 in possible damages caused by the higher monthly payments.

Rago also alleges that his refinanced mortgage would have been structured so that his part of his monthly payments would have been applied to pay down the principal of the loan. He alleges that the principal should have decreased from $493,700, as of May 1, 2011, to $466,189.45, as of August 9, 2013. R. 17 at 2.[5] This is a decrease of $1,018.90 per month, for a total of $61,134.00 over the relevant five year period. Thus, the total possible damages that flow from the higher interest rate and lost opportunity to pay down the loan's principal are $69,767.06.[6] Although this

---

[4] Although Rago's original complaint pegged this number at $88.06, R. 1-2 ¶ 13, the Court will use the higher number in order to determine what damages are at all possible.

[5] Rago does not explain the basis for his allegation that the principal balance as of August 9, 2013 was $466,189.45. R. 17 at 2-3. Based on Rago's allegations of an original principal of $493,700, a 3.5% interest rate and a monthly payment of $2,352.19, the Court calculated a lesser annual principal decrease than Rago alleges. (The Court's calculation contemplated a greater percentage of Rago's monthly payment being applied to principal in successive years.) But as with the alleged difference in monthly payments, the Court will use the greater estimate in order to determine what damages are at all possible.

[6] Rago does not seek attorney's fees as part of his "underlying claim," but rather "pursuant to a separate post-judgment right to 'costs' or 'fees' incurred in the litigation." *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 753 (7th Cir. 2013). Thus, the fees he seeks "are not included in potential damages calculations." *Id.*; *see also Smith*, 337 F.3d at 896-97 ("post-filing attorney's fees cannot count toward the

number approaches the $75,000 threshold, the Court sees no possible basis for Rago to collect more than the amount just calculated.

ING argues that it is not appropriate for the Court to "speculate as to what the plaintiff really meant" in his complaint when he stated that he was seeking $493,700. R. 16 at 5. ING also argues that granting remand here "would make ING's supposed 'statutory right of removal . . . subject to the plaintiff's caprice'" R. 16 at 5 (quoting *St. Paul*, 303 U.S at 294). But again, as the Court explained earlier, the Court's analysis and decision does not venture into speculation about Rago's intent or meaning, and it is not influenced by any change of heart Rago may have experienced. The question is what damages could possibly flow from Rago's complaint as a matter of law. Since it is not legally possible for Rago to collect more than $75,000, the Court lacks jurisdiction over his complaint and it must be remanded to the state court.

## Conclusion

For the reasons stated above, Rago's motion to remand, R. 13, is granted.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 30, 2013

---

amount in controversy requirement because federal jurisdiction exists, if at all, at the time of filing").

8